UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| NICKY D. HASHBARGER, | ) | |
| | ) | CASE NO. C10-1376-RSL |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Nicky D. Hashbarger appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1963 and has less than a high school education. (Administrative Record ("AR") 34, 234.) His past work experience includes employment as a construction

01 laborer. (AR 232.) He was last gainfully employed on July 30, 2006. (Dkt. No. 16 at 2 n.1.)

02 Plaintiff asserts that he is disabled due to chronic depression, bipolar disorder, personality

03 disorder, anxiety disorder, attention deficit disorder ("ADD"), memory impairment, hepatitis C,

04 left knee injury, and left shoulder injury. (Dkt. No. 16 at 2.) He asserts an onset date of April

05 15, 2007. (AR 9, 196.)

06      The Commissioner denied plaintiff's claim initially and on reconsideration. (AR

07 118-25.) Plaintiff requested a hearing, which took place on February 3, 2009. (AR 9, 72-95.)

08 On April 9, 2009, the ALJ issued a decision finding plaintiff not disabled. (AR 102-13.) On

09 September 24, 2009, the Appeals Council vacated the ALJ's decision and remanded the case for

10 a new hearing, which took place on March 9, 2010. (AR 114-17, 29-71.) On April 22, 2010,

11 the ALJ issued a second decision finding plaintiff not disabled. (AR 6-22.)

12      Plaintiff's administrative appeal of the ALJ's second decision was denied by the

13 Appeals Council (AR 2-5), making the ALJ's ruling the "final decision" of the Commissioner

14 as that term is defined by 42 U.S.C. § 405(g). On August 26, 2010, plaintiff timely filed the

15 present action challenging the Commissioner's decision. (Dkt. 3.)

16 II.  JURISDICTION

17      Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

18 405(g) and 1383(c)(3).

19 III.  DISCUSSION

20      As the claimant, Mr. Hashbarger bears the burden of proving that he is disabled within

21 the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

22 Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful

01  activity" due to a physical or mental impairment which has lasted, or is expected to last, for a

02  continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

03  A claimant is disabled under the Act only if his impairments are of such severity that he is

04  unable to do his previous work, and cannot, considering his age, education, and work

05  experience, engage in any other substantial gainful activity existing in the national economy.

06  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

07       The Commissioner follows a five-step sequential evaluation process for determining

08  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.   At step one, it must be

09  determined whether a claimant has engaged in substantial gainful activity.   20 C.F.R.

10  §§ 404.1520(b), 416.920(b).   The ALJ found plaintiff had not engaged in substantial gainful

11  activity since April 15, 2007, the alleged onset date.  (AR 12.)   At step two, it must be

12  determined whether a claimant suffers from a severe impairment.   The ALJ found plaintiff had

13  the following severe impairments:   affective disorder, anxiety-related disorder, substance

14  abuse (in partial remission), hepatitis C, and left knee injury.   *Id*.   Step three asks whether a

15  claimant's impairment or combination of impairments meets or medically equals one of the

16  listed impairments in 20 C.F.R. Part 404, Subpt P, App. 1.   The ALJ found that plaintiff did not

17  have an impairment or combination of impairments that met or medically equaled a listed

18  impairment.  (AR 13.)   If the claimant's impairments do not meet or equal a listing, the

19  Commissioner must assess residual functional capacity ("RFC") and determine at step four

20  whether the claimant has demonstrated an inability to perform past relevant work.   The ALJ

21  found that plaintiff had the RFC to perform light work with limitations in reaching overhead,

22  and unskilled work involving no more than one or two step instructions.  (AR 15.)   The ALJ

01  found plaintiff was unable to perform his past relevant work. (AR 20.) If the claimant is able

02  to perform his past relevant work, he is not disabled; if the opposite is true, then the burden

03  shifts to the Commissioner at step five to show that the claimant can perform other work that

04  exists in significant numbers in the national economy, taking into consideration the claimant's

05  RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*,

06  180 F.3d at 1099-1100. The ALJ found that jobs existed in significant numbers in the national

07  economy that plaintiff could perform. (AR 21.) The ALJ concluded that plaintiff was not

08  under a disability from April 15, 2007, through the date of the decision. (AR 22.)

09  　　　Plaintiff argues that the ALJ failed to properly consider his personality disorder at step

10  two, erred in his evaluation of the medical opinion evidence, and erred in his credibility

11  determination. (Dkt. 16 at 3-4.) He requests remand for an award of benefits, or,

12  alternatively, for further administrative proceedings. *Id*. at 4. The Commissioner argues that

13  the ALJ's decision is supported by substantial evidence and should be affirmed. (Dkt. No. 21

14  at 2.) For the reasons described below, the Court agrees with plaintiff.

15  　　　A.　　Step Two

16  　　　At step two, a claimant must make a threshold showing that his "medically determinable

17  impairments" significantly limit his ability to perform "basic work activities." *See Bowen v.*

18  *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work

19  activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§

20  404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not

21  severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

22  effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)

01 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis

02 screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54.

03       To establish the existence of a "medically determinable impairment," the claimant must

04 provide medical evidence consisting of "signs – the results of 'medically acceptable clinical

05 diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or

06 description of his physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005

07 (9th Cir. 2005). A claimant's own statement of symptoms alone is not enough to establish a

08 medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

09       In his first opinion, the ALJ found that plaintiff's diagnosed personality disorder was a

10 severe impairment, but failed to discuss and evaluate other physical and mental impairments.

11 (AR 12, 116-17.) Plaintiff sought review by the Appeals Council, which remanded the case

12 for additional evaluation of the medical evidence, including mental health treatment notes from

13 the Lummi Tribal Health Center and Sea Mar Community Health Center ("Sea Mar"). (AR

14 116.) On remand, the ALJ changed his original finding that plaintiff's personality disorder

15 was severe under 20 C.F.R. § 404.1520(c). (AR 13.)

16       The ALJ noted that, on February 6, 2008, examining psychiatrist Anselm A. Parlatore,

17 M.D., conducted a consultative psychiatric examination of plaintiff and diagnosed him with

18 personality disorder. *Id*. The ALJ, however, rejected this diagnosis, finding that "neither

19 prior nor subsequent mental health treatment records make any significant mentioning of the

20 condition." *Id*. In addition, the ALJ found that plaintiff "[did] not allege personality disorder

21 symptoms at the hearing and the mental health examiner at Sea Mar Mental Health specifically

22 indicated no diagnosis of personality disorder." *Id*. (citing AR 324). The ALJ concluded that

plaintiff's personality disorder was not "medically determinable." *Id.*

Plaintiff argues that the ALJ's finding that his personality disorder was not medically determinable is not supported by legitimate reasoning or substantial evidence. (Dkt. No. 16 at 4-9.) He contends that other doctors agreed with Dr. Parlatore's diagnosis, including non-examining psychologist Thomas Clifford, Ph.D., non-examining psychiatrist John Gambill, M.D., and non-examining psychologist Bruce Eather, Ph.D. AR 336-37, 339-56, 360, 362-74. Plaintiff also asserts that, contrary to the ALJ's findings, he alleged personality disorder symptoms at the hearing, and the Sea Mar mental health examiner "deferred" Axis II diagnosis (where personality disorders and mental retardation are recorded), which was not the same as specifying no diagnosis. *Id.* at 6-8. The Court agrees that the ALJ's step two determination was not supported by substantial evidence.

First, as plaintiff contends, other non-examining physicians reviewed the medical record and concluded that plaintiff suffered from personality disorder. For example, State Agency psychologist Dr. Clifford, whose opinion the ALJ purportedly adopted (AR 18), found in a Psychiatric Review Technique ("PRT") on February 20, 2008, that the medical record established diagnoses of affective disorder (depressive disorder), personality disorder, and substance addiction disorder (alcohol dependence in remission, marijuana abuse). (AR 339, 342, 346, 347.) In addition, State Agency psychologist Dr. Eather, whose opinion the ALJ also adopted, found on August 29, 2008, that the medical evidence of record established diagnoses of affective disorder (depressive disorder), personality disorder NOS, and substance abuse in partial remission. (AR 112, 362-74.) Thus, contrary to the ALJ's finding, other

01 medical evidence of record supported the diagnosis of personality disorder.[1]  While other

02 doctors may have reached contrary conclusions as the Commissioner argues, the fact that Drs.

03 Clifford and Eather agreed with Dr. Parlatore's diagnosis calls into doubt the ALJ's rationale

04 for finding plaintiff's personality disorder not medically determinable.

05      Second, the ALJ improperly relied on an unsigned mental health evaluation from Sea

06 Mar to determine whether plaintiff's personality disorder was medically determinable.  (AR

07 13, 322-24.)    The regulations identify "acceptable medical sources," such as licensed

08 physicians and licensed psychologists, who can provide evidence to establish an impairment.

09 *See* 20 C.F.R. § 404.1513(a).   Because neither the ALJ nor this Court is aware of what health

10 care provider authored the unsigned opinion, it is impossible to determine whether it was

11 written by an "acceptable medical source" as required by the regulations.   *See id.*

12 Accordingly, the ALJ erred in relying on the unsigned Sea Mar opinion in finding that

13 plaintiff's personality disorder was not medically determinable.

14      Furthermore, the ALJ misconstrued the Sea Mar evaluation when he stated that "the

15 mental health examiner at Sea Mar Mental Health specifically indicated no diagnosis of

16 personality disorder."  (AR 13.)   As plaintiff argues, the provider found no "*associated*

17 diagnosis" of personality disorder, but deferred ("799.9") on any Axis II diagnosis.   (AR 324.)

18 Thus, the unsigned Sea Mar opinion does not support the ALJ's finding.

19

---

20      [1]Plaintiff also argues that State Agency psychiatrist Dr. Gambill opined that the record
reflected a diagnosis of personality disorder.  (AR 360.)  However, as discussed below, the

21 ALJ properly rejected Dr. Gambill's opinion.   Accordingly, Dr. Gambill's opinion does not
support plaintiff's argument.

22

01    Third, the ALJ incorrectly stated in his step two finding that plaintiff did "not allege

02  personality disorder symptoms at the hearing."[2]   (AR 13.)   As plaintiff argues, he alleged he

03  had not held a job for longer than six months because he gets fired or walks off the job due, in

04  part, to problems interacting and socializing caused by his personality disorder.   (AR 37, 44,

05  46-48, 54, 56-57, 76.)   He testified that he would start a new job and do fine for a week or two,

06  then a co-worker would look at him "cross-eyed" and "[t]hat was it."   (AR 55-56.)   He stated,

07        A.   I don't understand what happened.   I mean, wow, [sic] this people they
            just went out of their way to help me and –
08
        Q.   Um-hum.   And you sabotaged yourself?
09
        A.   I'm pretty sure I did.
10
        Q.   And it was in some type of interpersonal blow up?
11
        A.   Yeah.
12

13  (AR 57.)   He also indicated that he had "[f]requent temper problems and trouble getting along

14  with people at a frequent – very frequent level."   (AR 59.)   Plaintiff explained, "in social

15  settings[,] I'm sort of like a – not paranoid but – or schizophrenic but kind of like on the edge."

16  _____

17      [2]According to the Diagnostic and Statistical Manual of Mental Disorders, there are ten
    recognized personality disorders, including borderline, paranoid, schizoid, schizotypal,
18  antisocial, histrionic, narcissistic, avoidant, dependent, and obsessive-compulsive personality
    disorder.   American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*
19  (Text. Rev., 4th ed. 2000) ("DSM-IV").   The DSM-IV also contains a category labeled
    personality disorder not otherwise specified ("NOS"), which is utilized when no other
20  personality disorder defined in the DSM-IV fits the patient's symptoms.   *See id.*   General
    symptoms of a personality disorder include:   frequent mood swings, stormy relationships,
21  social isolation, angry outbursts, suspicion and mistrust of others, difficulty making friends, a
    need for instant gratification, poor impulse control, and alcohol or substance abuse.   *Id.*

22

01  (AR 60.)  He testified that he questions other people's motives or behaviors and sometimes

02  misinterprets their actions.  (AR 61.)  Thus, the hearing testimony rebuts the ALJ's finding

03  that plaintiff did not allege personality disorder symptoms.

04          The Court finds that plaintiff met his burden of providing medical evidence consisting

05  of signs and symptoms of a personality disorder.  Even if the evidence does not establish the

06  diagnosed personality disorder caused more than a "slight abnormality," the ALJ must consider

07  the functional limitations of all medically determinable impairments in the remaining steps of

08  the sequential analysis.  *See* 20 C.F.R. §§ 416.923, 416.929, 404.1545(a); *see also Smolen*, 80

09  F.3d at 1290 (noting that if one severe impairment exists, all medically determinable

10  impairments must be considered at the remaining steps).  Because the ALJ found plaintiff's

11  personality disorder was not medically determinable, the Court cannot confidently conclude

12  that the ALJ considered all of plaintiff's functional limitations in the remaining steps.  The

13  ALJ's failure to consider plaintiff's personality disorder when assessing his ability to perform

14  and sustain work was prejudicial to plaintiff and was, therefore, not harmless.  *See Stout v.*

15  *Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).  On remand, the ALJ is

16  directed to reevaluate the medical evidence to determine whether a personality disorder should

17  be included as a severe impairment, and whether a personality disorder would contribute

18  additional functional limitations.  The ALJ is directed to develop the record further if

19  necessary, including obtaining further evaluation of plaintiff or expert medical testimony.

20          B.    Medical Opinion Evidence

21          Plaintiff also argues that the ALJ failed to provide specific and legitimate reasons for

22  rejecting the opinions of examining psychologist Dr. Parlatore, examining psychologist Ellen

01  Walker Lind, Ph.D., non-examining psychiatrist Dr. Gambill, and treating psychologist Sarah

02  Saxvik, Ph.D.  (Dkt. No. 16 at 9-20.)   The Commissioner disagrees and responds that the ALJ

03  gave sufficient reasons for rejecting the opinions of Drs. Parlatore, Lind, Gambill and Saxvik.

04  (Dkt. 21 at 8-17.)

05          In determining whether a claimant has a severe impairment, the ALJ must evaluate the

06  medical evidence and explain the weight given to the opinions of accepted medical sources in

07  the record.   The regulations distinguish among the opinions of three types of accepted medical

08  sources:   (1) sources who have treated the plaintiff; (2) sources who have examined the

09  plaintiff; and (3) sources who have neither examined nor treated the plaintiff but express their

10  opinion based upon a review of the plaintiff's medical records.   *See* 20 C.F.R. §§ 404.1527,

11  416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

12          In general, more weight should be given to the opinion of a treating physician than to a

13  non-treating physician, and more weight to the opinion of an examining physician than to a

14  non-examining physician.   *Lester*, 81 F.3d at 830.   Where not contradicted by another

15  physician, a treating or examining physician's opinion may be rejected only for "'clear and

16  convincing'" reasons.   *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

17  Where contradicted, a treating or examining physician's opinion may not be rejected without

18  "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

19  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

20          The ALJ may reject physicians' opinions "by setting out a detailed and thorough

21  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

22  making findings."   *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v.*

01 *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Rather than merely stating his conclusions, the

02 ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are

03 correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Although an

04 ALJ generally gives more weight to an examining doctor's opinion than to a non-examining

05 doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial

06 evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart,*

07 278 F.3d 947, 957 (9th Cir.2002); *Orn v. Astrue,* 495 F.3d 625, 632-33 (9th Cir. 2007).

### 1.   Anselm A. Parlatore, M.D.

09       Plaintiff argues that the ALJ failed to give specific and legitimate reasons for rejecting

10 the opinion of examining psychiatrist Dr. Parlatore, who performed a psychiatric evaluation of

11 the plaintiff in February 2008. (AR 330-34.) Dr. Parlatore diagnosed plaintiff with alcohol

12 dependence and abuse in partial remission, cannabis abuse, depressive disorder NOS, and

13 personality disorder NOS. (AR 333.) As part of his diagnosis, Dr. Parlatore assigned

14 plaintiff a Global Assessment of Functioning score ("GAF")[3] of 55, which indicates "moderate

15 symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate

16 difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers

17 or co-workers)." DSM-IV at 32.

18       Although the ALJ adopted Dr. Parlatore's mental status examination results, he

19 assigned "limited weight," to the GAF score of 55. (AR 17, 19.) To the extent the GAF score

20

---

21       [3]The GAF score is a subjective determination based on a scale of 1 to 100 of "the
clinician's judgment of the individual's overall level of functioning." DSM-IV at 32-34.

22

indicated that plaintiff had moderate limitations in social or occupational functioning, the ALJ found it to be "inconsistent with the demonstrated minimal functional limitations evident in the mental status examination," and "inconsistent with Dr. Parlatore's own statement that it was 'not clear' as to why the claimant was not working." (AR 19.) The ALJ noted that Dr. Parlatore described plaintiff as "an affable and congenial fellow" with a "pleasant demeanor" and a "good sense of humor." (AR 17, 332.) Dr. Parlatore noted that plaintiff's "mood was happy and his affect was full." *Id.* He further noted that "[o]n cognitive exam he was totally intact and he remembered 4 out of 4 objects after 15 minutes, was able to do serial 7's rapidly and correctly, spell the word 'world' forward and backward, do digit span and retention," and demonstrated abstract thinking. *Id.* Dr. Parlatore concluded, "It is not clear to this examiner why he is not working now." (AR 333.) The Court finds no error.

As the ALJ found, plaintiff's essentially normal mental status exam was inconsistent with Dr. Parlatore's assessment of moderate limitations. (AR 19, 333.) Likewise, Dr. Parlatore's assessment of moderate limitations was inconsistent with his remark, made on the same day, that "[i]t is not clear . . . why he is not working now." *Id.* Such discrepancies are specific and legitimate reasons for not relying on the doctor's opinion regarding plaintiff's limitations. *See Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005) (holding that discrepancy between a physician's notes and recorded observations and opinions and the physician's assessment of limitations is a clear and convincing reason for rejecting the opinion.); *see also Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir.2001) (finding that an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and unsupported by clinical findings or physician's own treatment notes).

01     Plaintiff argues that Dr. Parlatore's GAF assessment was based not only on his mental

02  status exam, but also on his review of the medical records and on plaintiff's history of

03  homelessness, incarcerations, conflicts with the police, and domestic violence.   (Dkt. No. 16 at

04  12.)   While Dr. Parlatore may have based his GAF assessment on other evidence, his

05  assessment is devoid of any clinical findings or rationale to support his conclusion that plaintiff

06  had "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)

07  OR moderate difficulty in social, occupational, or school functioning (e.g., few friends,

08  conflicts with peers or co-workers)."   DSM-IV at 32.   "The ALJ need not accept the opinion

09  of any physician . . .   if that opinion is brief, conclusory, and inadequately supported by clinical

10  findings."   *Thomas*, 278 F.3d at 957.   The ALJ's reasons for giving limited weight to Dr.

11  Parlatore's GAF assessment is supported by substantial evidence and was based on a

12  permissible determination within the ALJ's province.

13                    2.     Ellen Walker Lind, Ph.D.

14     Examining psychologist Ellen Walker Lind, Ph.D., performed a psychological

15  evaluation of plaintiff in March 2007, and again in February 2008.   (AR 413-18, 433-40.)   In

16  March 2007, she diagnosed plaintiff with bipolar II disorder, generalized anxiety disorder, and

17  alcohol abuse.   (AR 436.)   She assigned him a GAF score of 38, indicating "[s]ome

18  impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or

19  irrelevant) OR major impairment in several areas, such as work or school, family relations,

20  judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable

21  to work; child frequently beats up younger children, is defiant at home, and is failing at

22  school)."   DSM-IV at 34.   She opined that "[p]rognosis for improvement of [plaintiff's]

symptoms [was] poor based on severity and chronicity." (AR 436.) She explained that plaintiff has never "had a stable life with his own apartment or home," "he has not been able to hold jobs for long periods of time because of absentee issues related to alcohol abuse or periods of depression." *Id*.

In February 2008, Dr. Lind diagnosed plaintiff with alcohol abuse in early full remission and bipolar II disorder. (AR 414.) She opined that plaintiff had *marked* cognitive limitations in his ability to learn new tasks, exercise judgment and make decisions, and perform routine tasks. (AR 415.) She stated that plaintiff had "[l]ots of forgetfulness on an ongoing basis exacerbated by depression, anxiety, and alcohol abuse. Distracted by his worries. Very low motivation and energy" *Id*. She also opined that plaintiff had *marked* social limitations in his ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting, and control physical or motor movements and maintain appropriate behavior. (AR 415.) She stated that plaintiff was "not likely to be able to be reliable due to pattern of alcohol abuse, depression, and low motivation, low stress tolerance. Irritable. Panic attacks. History of anger issue with alcohol use." *Id*.

The ALJ assigned "little weight to any of the opinions of Dr. Lind," because they were based on plaintiff's subjective complaints, were significantly inconsistent with the evidence of record including her own evaluation results, and with plaintiff's own reported activities. (AR 19.) Specifically, the ALJ found that Dr. Lind's opinion that plaintiff had *marked* cognitive limitations was inconsistent with his Full Scale IQ, Verbal IQ, and Performance IQ scores that were in the low average range. (AR 19, 437.) The ALJ pointed out that Dr. Lind found plaintiff "exhibited good remote memory and fair recent memory, recalled 3 objects after 5

01 minutes, recalled 3 digits forward and backwards, calculated serial 3's, spell[ed] world forward

02 and backwards, demonstrated average abstract thinking and fair insight into his condition, and

03 had no difficulty following the conversation." (AR 19, 417-18.) The ALJ noted that plaintiff

04 performed similarly well during a mental status examination with Dr. Parlatore. (AR 19, 332.)

05 In addition, the ALJ found that Dr. Lind's opinions were inconsistent with plaintiff's reported

06 ability to perform various daily activities (including maintaining self care, preparing his own

07 daily meals, performing household chores such as dishwashing and laundry, using public

08 transportation, shopping in stores every other day, and managing his own finances), and engage

09 in hobbies (including beading, reading, walking, visiting the library and beach on a daily basis,

10 watching television, and playing video games). (AR 17, 19.)

11 The ALJ also found that Dr. Lind's opinion that plaintiff had *marked* social limitations

12 was inconsistent with plaintiff's "demonstrated ability to maintain concentration and persist

13 during mental status examinations, as well as demonstrated ability to socially interact and

14 perform activities of daily living . . . as discussed above." (AR 19.) The ALJ further noted

15 that "Dr. Lind's opinions indicate consideration of the claimant's alcohol use with regard to his

16 mental functioning, which is simultaneously inconsistent with her denial that the claimant's

17 alcohol exacerbated the claimant's mental symptoms." (AR 19, 415.)

18 Plaintiff argues that the ALJ's reasons for disregarding Dr. Lind's opinions do not

19 withstand scrutiny. Contrary to plaintiff's contention, the ALJ's reasons for giving limited

20 weight to Dr. Lind's opinions are supported by substantial evidence and were based on a

21 reasonable determination. As indicated above, the ALJ discussed Dr. Lind's opinions at

22 length and provided several specific and legitimate reasons for rejecting her opinions.

01    First, the ALJ rejected the opinions of Dr. Lind based, in part, because her opinions

02 were premised on plaintiff's subjective complaints, which the ALJ discounted for the reasons

03 discussed below. (AR 19.) The Ninth Circuit has held that an ALJ may reject a doctor's

04 opinion that is premised to a large extent on the claimant's self-reports that have been properly

05 discounted. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing

06 *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). A review of Dr. Lind's records reveals that

07 they largely reflect plaintiff's self-described history, with little independent analysis or

08 diagnosis. Aside from the mental status exam and test result portions of her psychological

09 evaluation, Dr. Lind's 2007 opinion was based primarily on plaintiff's self-reported psychiatric

10 history, medical history, social and family history, work history, and functional

11 information/behavior. (AR 433-39.) Likewise, Dr. Lind's 2008 opinion regarding plaintiff's

12 functional limitations was based, in part, on plaintiff's own characterization of his symptoms.

13 (AR 413-18.) It was reasonable for the ALJ to discount a doctor's opinion that was based on

14 less than credible statements.

15    Second, the ALJ found that Dr. Lind's opinion that plaintiff had marked cognitive

16 factors and a GAF of 38, was inconsistent with her own test results. (AR 19.) The ALJ noted

17 that plaintiff's test results on the Full Scale IQ, Verbal IQ, and Performance IQ scores were in

18 the low average range. (AR 19, 413, 437-39.) In addition, the ALJ noted that plaintiff

19 exhibited good remote memory and recent memory scores, average abstract thinking, insight

20 into his condition, and had no difficulty following the conversation. (AR 19, 417-18, 434-35,

21 437-39.) He also noted that plaintiff scored equally well during a mental status exam with Dr.

22 Parlatore. (AR 19, 332.) The ALJ need not accept a doctor's opinion that is inadequately

01 supported by clinical findings. *Thomas*, 278 F.3d at 957. The ALJ's finding that Dr. Lind's

02 test results provided no support for her opinion that plaintiff had marked cognitive limitations

03 and a GAF score of 38, was a specific and legitimate reason, supported by substantial evidence,

04 to give that opinion little weight.

05       The ALJ also found that Dr. Lind's opinion that plaintiff had marked cognitive factors

06 and a GAF of 38, was inconsistent with plaintiff's reported daily activities and hobbies. (AR

07 19.) As indicated above, the ALJ noted that plaintiff prepared his own meals, performed

08 household chores, used public transportation, shopped, managed his own finances, and engaged

09 in hobbies, including beading, reading, walking, visiting the library and beach, watching

10 television, and playing video games. This inconsistency was a specific and legitimate reason,

11 supported by substantial evidence, to give Dr. Lind's opinion little weight.

12       Third, the ALJ found Dr. Lind's opinion that plaintiff had marked social factors was

13 inconsistent with plaintiff's demonstrated ability to maintain concentration and persist during

14 mental status examinations, as well as demonstrated ability to socially interact and perform

15 activities of daily living as discussed above." (AR 19.) Again, this inconsistency was a

16 specific and legitimate reason, supported by substantial evidence, to give Dr. Lind's opinion

17 little weight.

18       It is the role of the ALJ to determine credibility, resolve conflicts in medical opinions,

19 and resolve ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The role of

20 this Court is limited. When the evidence is susceptible to more than one rational

21 interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at

22 954. Although the interpretation of the record urged by plaintiff may be theoretically possible,

01 it simply cannot be said that plaintiff's view of the evidence is the only rational interpretation.

02 Accordingly, the Court concludes the ALJ did not err in evaluating Dr. Lind's opinions.

03            3.    <u>Sarah Saxvik, Ph.D.</u>

04        Dr. Saxvik was plaintiff's treating psychologist at Lummi Tribal Health Center. (AR

05 357-58, 472-86.) As the ALJ explained, plaintiff received therapy there "once in February

06 2008, and once in March 2008. He then did not resume treatment until 8 months later in late

07 September 2008 through October 2008. Then the claimant did not return for treatment until

08 January 2009 for one session before lapsing again for almost 12 months until February 2010."

09 (AR 17.)

10        On January 21, 2009, Dr. Saxvik completed a Department of Social & Health Services

11 ("DSHS") psychological evaluation in which she opined that plaintiff was severely limited in

12 his ability to understand, remember, and follow complex instructions; exercise judgment and

13 make decisions; and respond appropriately and tolerate the pressure and expectations of a

14 normal work setting. (AR 480-83.) She also opined that plaintiff had marked limitations in

15 his ability to understand, remember, and follow simple instructions; relate appropriately to

16 co-workers and supervisors; interact appropriately in public contacts; and care for himself,

17 including personal hygiene and appearance. (AR 482.) Dr. Saxvik noted that these

18 conclusions were based on plaintiff's "difficulty concentrating due to intrusive recollections of

19 trauma," "very poor self-esteem," history of confrontational behavior with former boss,

20 difficulty trusting others, and homelessness. *Id.*

21        The ALJ gave Dr. Saxvik's opinion little weight, finding it inconsistent with the record

22 for the following reasons:

01      First, the record fails to sufficiently document consistent reports of intrusive
        recollections during the relevant period other than in this evaluation by Dr. Saxvik.
02      [AR 482.]   Second, despite the claimant's reports of low self-esteem and difficulty
        with social interaction, the claimant himself reported that he has hundreds of
03      "friends;" knows his way around the street in order to avail himself to the best
        resources while homeless; and visits public places including stores, library, movie
04      theatres, downtown streets to panhandle, and beaches on a regular basis as
        discussed above.  Multiple providers also noted the claimant's cooperative and
05      pleasant attitude as also discussed earlier.   Further, Dr. Saxvik's opinion regarding
        the claimant['s] limited ability to understand remember, and follow even simple
06      instructions is inconsistent with the claimant's demonstrated mental functioning
        ability as documented in various mental status examinations and cognitive testing
07      as discussed earlier.

08  (AR 20.)

09      On February 26, 2010, Dr. Saxvik completed written interrogatories provided by

10  plaintiff's counsel in which she opined that plaintiff's mental impairments met Listing 12.04 for

11  affective disorders ("characterized by a disturbance of mood, accompanied by a full or partial

12  manic or depressive syndrome"), and Listing 12.06 for anxiety-related disorders, 20 C.F.R. Part

13  404, Subpt. P, App. 1.  (AR 488-92.)   As the basis for her conclusion that plaintiff's

14  impairments met Listing 12.04, she stated, "First met Nicky 2-22-08, his symptoms nor his

15  ability to tolerate activities of healthy daily living have not improved in 2 yrs."  (AR 490.)

16  Similarly, as the basis for her conclusion that plaintiff's impairments met Listing 12.06, she

17  stated, "Nicky's psychiatric symptoms have not improved in 2 yrs."   (AR 492.)

18      The ALJ found these opinions were inconsistent and unsupported by the record for

19  similar reasons discussed above, including plaintiff's performance on mental status

20  examinations, his demonstrated ability to adequately perform activities of daily living, and his

21  documented positive social interactions.  (AR 20.)  The ALJ also noted that, although Dr.

22  Saxvik opined that plaintiff's impairments met Listing 12.04 and Listing 12.06, her mental

health treatment was limited and sporadic, and there was no documentation of any psychiatric medication treatment. *Id*. In addition, the ALJ noted that Dr. Saxvik's opinions were based on plaintiff's questionable subjective complaints. *Id*. Each of the reasons offered by the ALJ is supported in the record, and each provides a basis for discounting the weight to be given to the opinion of Dr. Saxvik.

Plaintiff asserts that the ALJ's reasons for rejecting Dr. Saxvik's opinions were inadequate. (Dkt. No. 16 at 17.) He contends that "Dr. Saxvik had noted plaintiff's intrusive recollections (from the PTSD she has diagnosed and treated plaintiff for) in her mental status exam." *Id*. However, as the Commissioner argues, the ALJ correctly noted that plaintiff's mental health treatment notes, including treatment notes from Dr. Saxvik, lacked any mention of "intrusive thoughts." (AR 20, 474-77, 485-86.) Aside from the one notation in Dr. Saxvik's January 2009 Brief Mental Status Exam (AR 484), there was no mention of "intrusive recollections" anywhere else in the medical evidence of record. Thus, the ALJ properly found "the record fails to sufficiently document consistent reports of intrusive recollections during the relevant period other than in this evaluation by Dr. Saxvik." (AR 20.) The ALJ did not err.

Plaintiff argues that the ALJ "ignored the fact that Plaintiff's testimony of hundreds of friends is really just that he is acquainted with so many other homeless people in the area." (Dkt. No. 16 at 17.) He contends his "actual testimony" was "I get along with everyone until they prove me wrong." *Id*. Plaintiff also disputes the ALJ's finding that Dr. Saxvik's opinions were inconsistent with other provider's opinions that he had a pleasant attitude. *Id*.

The Commissioner notes that plaintiff testified to capabilities in excess of those assessed by Dr. Saxvik, and correctly observes that "[t]he ALJ is responsible for resolving

conflicts in the medical record." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Here, the ALJ found that despite plaintiff's claims of low self-esteem and difficulty with social interaction, he reported that he "knows a lot of people," possesses "survival skills" for living on the streets, has "hundreds" of friends who he sees every day, knows his way around the street in order to avail himself to the best resources while homeless, visits very public places, panhandles downtown, and volunteers at the Rainbow Recovery Center. (AR 16, 20, 46, 49, 218, 222.) The ALJ also found that multiple providers noted plaintiff's "cooperative and pleasant attitude." (AR 17, 20, 332, 446, 357-58.) The ALJ did not err.

Finally, the ALJ also noted that there were significant gaps in plaintiff's mental treatment history and there was no documentation of any psychiatric medication treatment. (AR 20.) Medication treatment and the amount of treatment "is also an important indicator of the intensity and persistence of [plaintiff's] symptoms." 20 C.F.R. § 404.1529(c)(3), 416.929(c)(3). The ALJ reasonably found the limited mental treatment record and the lack of psychotropic medication treatment suggested plaintiff had some mental limitations, but did not support the disabling symptoms Dr. Saxvik alleged. In sum, the ALJ did not err in giving limited weight to Dr. Saxvik's opinions.

### 4. John Gambill, M.D.

In April 2008, state agency consultant Dr. Gambill reviewed the medical evidence of record. (AR 336-37, 360.) He opined that the severity of plaintiff's mental impairments equaled Listing 12.04(C)(1) and/or (2) for affective disorders. (AR 360.) Without explanation, Dr. Gambill asserted that "[a] rating of equaling [sic] 12.04C12 is supported by the

01 chronic severe vocational and socioeconomic dysfunction he has exhibited over the years."   *Id.*

02 If plaintiff's impairments equal one of the listed impairments, he is considered disabled at step

03 three without consideration of his age, education, or work experience.   20 C.F.R. §§

04 404.1520(d), 416.920(d).

05       Listing 12.04(C) describes affective disorders as a condition characterized by

06       a disturbance of mood, accompanied by a full or partial manic or depressive
syndrome.   Mood refers to a prolonged emotion that colors the whole psychic life;
07       it generally involves either depression or elation.

08       The required level of severity for these disorders is met when the requirements in
both A and B are satisfied, or when the requirements in C are satisfied.
09       . . .
      C.   Medically documented history of a chronic affective disorder of a least 2 years'
10       duration that has caused more than a minimal limitation of ability to do basic work
activities, with symptoms or signs currently attenuated by medication or
11       psychosocial support, and one of the following:

12       1.   Repeated episodes of decompensation, each of extended duration; or

13       2.   A residual disease process that has resulted in such marginal adjustment that
even a minimal increase in mental demands or change in the environment would be
14       predicted to cause the individual to decompensate; or

15       3.   Current history of 1 or more years' inability to function outside a highly
supportive living arrangement, with an indication of continued need for such an
16       arrangement.

17 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04.

18       The ALJ assigned "little weight" to Dr. Gambill's opinion that the severity of plaintiff's

19 mental impairments equaled Listing 12.04(C) for affective disorders.   (AR 18-19.)   He found

20 that the record lacked sufficient evidence indicating that "even a minimal increase in mental

21 demands or change in the environment would be expected to cause decompensation" under

22 12.04(C)(2), or that plaintiff had "one or more years' inability to function outside a highly

01   supportive living arrangement" under 12.04(C)(3). *Id.* At step three, the ALJ also found

02   plaintiff had experienced "no episodes of decompensation of extended duration," as required

03   under 12.03(C)(1). (AR 14.) In addition, the ALJ found that Dr. Gambill's opinion was

04   inconsistent and unsupported by the record, including plaintiff's "performance on mental status

05   examinations, demonstrated ability to adequately perform activities of daily living, documented

06   positive social interactions, limited mental health treatment record characterized by significant

07   gaps in treatment and no documentation of any psychiatric medication." (AR 18-19.)

08   Plaintiff presents nothing to show the ALJ's findings are erroneous.

09         As the Commissioner argues, Dr. Gambill's "generalized assertion of functional

10   problems is not enough to establish disability at step three." *Tackett*, 180 F.3d at 1100.

11   Furthermore, whether plaintiff's impairments met or equaled one of the listed impairments is an

12   issue reserved to the Commissioner. SSR 96-5p. The ALJ's opinion gave sufficient reasons

13   for concluding that the evidence did not establish plaintiff's impairments equaled a listing and

14   those reasons find support in the record.

15              5.    Thomas Clifford, Ph.D., and William Lysak, Ph.D.

16         The ALJ assigned "significant weight" to the mental residual functional capacity

17   conclusions reached by the State Agency physicians, Thomas Clifford, Ph.D., and William

18   Lysak, Ph.D., who opined that plaintiff was not disabled and had generally mild to moderate

19   mental functioning limitations. (AR 18, 339-56, 396-99, 419-32.)

20         Plaintiff argues that the ALJ erred in giving greater weight to the opinions of Drs.

21   Clifford and Lysak, than to the opinions of Drs. Parlatore, Lind, Saxvik, and Gambill. (Dkt.

22   No. 16 at 19-20.) He contends that the opinions of Drs. Clifford and Lysak were not based on

the record as a whole and, thus, could not be relied on by the ALJ.   The Court disagrees.

The Ninth Circuit has held that the opinions of non-treating, non-examining doctors may serve as substantial evidence when the opinions are consistent with evidence in the record. *See, e.g., Thomas*, 278 F.3d at 957.   Dr. Clifford's and Dr. Lysak's opinions were corroborated by the mental status examinations and cognitive testing conducted by Dr. Parlatore (AR 17, 332) and Dr. Lind (AR 17, 417-18, 434-35, 437-39); the opinion of State Agency psychologist Bruce Eather, Ph.D. (AR 362-75); as well as the evidence of plaintiff's daily activities (AR 14, 17, 218-24, 332, 434), social activities and interactions (AR 14, 17, 218-222, 330-33, 357-58), and ability to maintain concentration (AR 17, 222-23).   Because Drs. Clifford's and Lysak's opinions were based on independent clinical findings and other substantial evidence in the record, the ALJ had discretion to disregard the examining and treating physicians' opinions. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The ALJ's interpretation of the conflicting medical evidence was supported by substantial evidence included in his factual findings.   The ALJ did not err.

C.   Credibility

Plaintiff next argues that the ALJ erred in rejecting his testimony.   (Dkt. No. 16 at 20-22.)   A determination of whether to accept a claimant's subjective symptom testimony requires a two step analysis.   20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p (1996).   First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.   20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-2; SSR 96-7p.   Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

01 testimony as to the severity of symptoms solely because they are unsupported by objective

02 medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*,

03 157 F.3d at 722 (internal citations omitted). Absent affirmative evidence showing that the

04 claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the

05 claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

06       When evaluating a claimant's credibility, the ALJ must specifically identify what

07 testimony is not credible and what evidence undermines the claimant's complaints; general

08 findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may

09 consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

10 inconsistencies in testimony or between testimony and conduct, daily activities, work record,

11 and testimony from physicians and third parties concerning the nature, severity, and effect of

12 the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec.*

13 *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

14       Here, the ALJ provided several reasons for discrediting plaintiff's testimony about the

15 severity of his symptoms. First, the ALJ found that plaintiff's allegations of depressive and

16 anxiety symptoms with problems with social interaction and concentration were contradicted

17 by the medical reports from Dr. Parlatore, Lummi Tribal Health Center, and Dr. Lind. (AR

18 16-17.) "Contradiction with the medical record is a sufficient basis for rejecting the claimant's

19 subjective testimony." *Carmickle,* 533 F.3d at 1161.

20       The ALJ noted that Dr. Parlatore described plaintiff as an "affable and congenial

21 fellow" with "pleasant demeanor," and a "good sense of humor." (AR 17, 332.) Dr. Parlatore

22 noted that plaintiff's "mood was happy and his affect was full," and that "[o]n cognitive exam

01 he was totally intact and he remembered 4 out of 4 objects after 15 minutes, was able to do

02 serial 7's rapidly and correctly, spell the word 'world' forward and backward, do digit span and

03 retention," and demonstrated abstract thinking.  *Id.*  Similarly, treatment notes from Lummi

04 Tribal Health indicated that plaintiff was "cooperative," "pleasant," "nicely dressed and

05 groomed," and talkative" with appropriate affect.  (AR 17, 357-58.)

06      The ALJ also noted that Dr. Lind found that plaintiff "exhibited no symptoms of social

07 withdrawal along with no motor agitation or retardation, paranoid behavior, hallucination,

08 thought disorder, or hyperactivity."  (AR 17, 417.)  Additionally, Dr. Lind reported plaintiff

09 exhibited good remote memory, fair recent memory, recalled three objects after five minutes,

10 recalled three digits forwards and backwards, calculated serial three's, spelled "world" forward

11 and backward, demonstrated abstract thinking, fair insight into his condition, and had no

12 difficulty following the conversation.  *Id.*

13      Second, the ALJ found plaintiff's daily activity were inconsistent with his claimed

14 limitations.  (AR 17.)  Specifically, the ALJ noted plaintiff maintained self care, prepared his

15 own meals, performed household chores, used public transportations, shopped in stores,

16 managed his own finances, participated in hobbies (such as beading, reading, and walking), and

17 visited the library and beach on a daily basis.   With regards to social interaction, the ALJ noted

18 that plaintiff reported "engaging in social activities with others on a daily basis and visiting very

19 public places such as the beach, the library, and downtown streets for panhandling."  *Id.*

20 Inconsistencies between a claimant's reported activities and his asserted limitations are an issue

21 of credibility.  *See Burch*, 400 F.3d at 680-81 (holding that evidence of daily activities

22 supported the ALJ's credibility determination).

01        Third, the ALJ found plaintiff's testimony regarding his mental health was undermined

02 by his limited and sporadic mental health treatment. (AR 17.) As the ALJ explained, plaintiff

03 began therapy at Sea Mar Mental Health in October 2007, which he continued through

04 November 2007. (AR 17.) Plaintiff then received therapy at Lummi Tribal Health once in

05 February 2008, and once in March 2008. *Id*. "He then did not resume treatment until 8

06 months later in late September 2008 through October 2008." *Id*. Plaintiff "did not return for

07 treatment until January 2009 for one session before lapsing again for almost 12 months until

08 February 2010." *Id*. The ALJ also found plaintiff's testimony was undermined by the fact

09 that no treating provider recommended the need for psychiatric medication. *Id*. An ALJ

10 appropriately considers an unexplained or inadequately explained failure to seek treatment or

11 follow a prescribed course of treatment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th

12 Cir. 2008) (finding the ALJ permissibly inferred that the claimant's pain was not as disabling as

13 alleged "in light of the fact that he did not seek an aggressive treatment program and did not

14 seek an alternative or more-tailored treatment program after he stopped taking an effective

15 medication due to mild side effects."); *see also Fair*, 885 F.2d at 603 (finding unexplained or

16 inadequately explained failure to pursue treatment is a clear and convincing reason to question a

17 claimant's credibility).

18        The foregoing reasons offered by the ALJ to justify his adverse credibility

19 determination are sufficiently clear and convincing and supported by substantial evidence in the

20 record. The ALJ permissibly discounted plaintiff's testimony regarding his mental health

21 limitations based on inconsistencies with other evidence, plaintiff's range of activities, and his

22 limited and sporadic mental health treatment.

01        Plaintiff claims that the ALJ erred in his credibility and RFC assessments because he

02  failed to properly determine and consider all of his severe impairments throughout the

03  evaluation process. (Dkt. No. 16 at 20-21.) Plaintiff does not challenge any of the reasons

04  provided by the ALJ for finding him not credible. The Court has already determined that this

05  matter should be remanded for consideration of whether plaintiff's personality disorder should

06  be included as a severe impairment, and whether a personality disorder would contribute

07  additional functional limitations to the RFC assessment. However, as indicated above, the

08  ALJ did not err in discounting plaintiff's subjective complaints and this issue does not require

09  remand. The evidence in its entirety was rationally interpreted to support a finding that the

10  severity and intensity of plaintiff's pain and limitation complaints were not credible.

11                      IV.  CONCLUSION

12        For the foregoing reasons, the Court recommends that this case be REVERSED and

13  REMANDED for further administrative proceedings not inconsistent with this opinion. A

14  proposed order accompanies this Report and Recommendation.

15        DATED this 12th day of July, 2011.

16

17                              _____

                                  Mary Alice Theiler

18                                  United States Magistrate Judge

19

20

21

22